STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

WCA 15-305


NUMA C. HERO & SON, ET. AL.

VERSUS

RONALD LELEUX



**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 11-00062
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

**DAVID KENT SAVOIE**
**JUDGE**

**********

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and David Kent Savoie, Judges.



**AFFIRMED.**

**Stephen W. Glusman**
**Glusman, Broyles & Glusman**
**A Limited Liability Company**
**P. O. Box 2711**
**Baton Rouge, LA 70821**
**(225) 387-5551**
**COUNSEL FOR APPELLEES:**
    **Numa C. Hero & Son and**
    **Louisiana Home Builders Association SIF**

**Michael B. Miller**
**Attorney At Law**
**P. O. Drawer 1630**
**Crowley, LA 70527-1630**
**(337) 785-9500**
**COUNSEL FOR APPELLANT:**
    **Ronald Leleux**

**SAVOIE, Judge.**

In this workers' compensation case, the employee has appealed a ruling modifying the status of his benefits from temporary total disability benefits (TTD) to supplemental earnings benefits (SEB). For the following reasons, we affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

On August 16, 2005, Appellant Ronald Leleux was injured in the course and scope of his employment as a carpenter with Numa C. Hero & Son (Numa Hero) when he was trying to escape from wasps. From the medical records submitted at trial, it appears that he initially saw Dr. John Cobb, an orthopedic surgeon, and Dr. Don Marx, a chiropractor.

A consent judgment was entered on April 30, 2007, awarding Mr. Leleux TTD benefits at $438.00 per week, based upon an average weekly wage of $1,376.00, as well as reasonable and necessary medical treatment and a stipulated amount of penalties, and attorney fees.

In February 2010, Dr. Cobb recommended lumbar surgery at L3-4 and L4-5, but Mr. Leleux declined, and, as of the date of trial, he had chosen not to undergo surgery. Dr. Cobb referred Mr. Leleux to Dr. Daniel Hodges for pain management. It appears that Mr. Leleux first saw Dr. Hodges on November 18, 2010, with complaints of back pain, right hip pain, and right leg pain, as well as complaints of depression, memory loss, and difficulty sleeping. An EMG on December 14, 2010, indicated low grade L5-S1 subacute radicular changes. Mr. Leleux saw Dr. Hodges approximately every three months, with the last record in evidence being January 7, 2014.

On October 24, 2012, Mr. Leleux underwent an evaluation by Dr. Douglas Bernard, who was Numa Hero's choice of physician. Dr. Bernard's report

indicated that Mr. Leleux has very benign degenerative disk disease and that he would pass a pre-employment physical for unrestricted work activities.

The Workers' Compensation Judge (WCJ) appointed Dr. Christopher Belleau to conduct an Independent Medical Examination (IME). Dr. Belleau saw Mr. Leleux on August 7, 2013. Dr. Belleau recommended that Mr. Leleux undergo a Functional Capacity Examination (FCE). However, it appears that Mr. Leleux was unable to perform the FCE on two separate occasions due to uncontrolled high blood pressure, and therefore, the Office of Workers' Compensation asked Dr. Belleau to provide a report indicating his opinion of any specific work restrictions. Dr. Belleau testified in a deposition that Mr. Leleux had reached maximum medical improvement and that he was capable of sedentary work with some restrictions.

On April 10, 2014, Numa Hero filed a motion seeking the modification of the prior consent judgment to reclassify benefits from TTD to SEB. Numa Hero did not seek a reduction in the amount of benefits. A trial on the motion was held in May 2014. Mr. Leleux was the only witness called to testify. The parties also submitted the deposition of Dr. Belleau and the medical records and exhibits attached thereto, as well as the records of Dr. Bernard and Dr. Hodges.

Pursuant to a judgment dated November 3, 2014, the WCJ modified the classification of Mr. Leleux's benefits from TTD to SEB, calculated upon a zero earnings calculation.

Mr. Leleux appeals assigning the following four assignments of error: (1) The WCJ erred in allowing modification without the employer showing a change in conditions required by La.R.S. 23:1310.8(B); (2) The WCJ erred in allowing modification based on a finding that "Mr. Leleux's condition [had] plateaued and

stabilized"; (3) The WCJ erred in finding Mr. Leleux's testimony unreliable; and (4) The WCJ erred in finding that the employer was entitled to modify benefits from TTD to SEB.

## STANDARD OF REVIEW

Factual findings of the WCJ are subject to manifest error review. *Buxton v. Iowa Police Dep't*, 09-520 (La. 10/20/09), 23 So.3d 275. Whether the burden of proof has been satisfied and whether testimony is credible are questions of fact to be determined by the WCJ. *Id.* Under the manifest error rule, the reviewing court does not decide whether the factfinder was right or wrong, but only whether its findings are reasonable. *Id.*

## DISCUSSION

### *Applicable Burden of Proof:*

Primarily at issue in this appeal is the applicable burden of proof required for modification of TTD benefits to SEB benefits. In his first and fourth assignments of error, Appellant Mr. Leleux argues that La.R.S. 23:1310.8(B) required Numa Hero to prove a change in his physical condition from the time of the original consent judgment and that the WCJ erred by not considering this requirement. Appellee Numa Hero argues that La.R.S. 23:1310.8(A) sets forth the applicable burden of proof, and therefore it was not required to prove a change in the employee's physical condition. Alternatively, Appellee argues that the WCJ did find a change in condition sufficient to support modification to SEB.

Louisiana Revised Statutes 23:1310.8 is a jurisdictional statute and sets forth the burden of proof required to establish the WCJ's jurisdiction over the claims asserted. In *Rivers v. Bo Ezernack Hauling Contractor, LLC*, 09-1495 (La.App. 3 Cir. 5/5/10), 37 So.3d 1088, we noted that the finality of workers' compensation

3

cases is treated differently than ordinary judgments and that La.R.S. 23:1310.8 addresses the difference. Louisiana Revised Statutes 23:1310.8 provides in pertinent part as follows:

> A. (1) The power and jurisdiction of the workers' compensation judge over each case shall be continuing and he may, upon application by a party and after a contradictory hearing, make such modifications or changes with respect to former findings or orders relating thereto if, in his opinion, it may be justified, including the right to require physical examinations as provided for in R.S. 23:1123 . . . .
>
> . . . .
>
> B. Upon the motion of any party in interest, on the ground of a change in conditions, the workers' compensation judge may, after a contradictory hearing, review any award, and, on such review, may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in the Workers' Compensation Act, and shall state his conclusions of fact and rulings of law, and the director shall immediately send to the parties a copy of the award.

In *Brown v. Rouse Co.,* 97-1243, p. 5 (La.App. 4 Cir. 1/14/98), 706 So.2d 547, 550, *writ denied,* 98-419 (La. 5/1/98), 805 So.2d 191, the court discussed the difference between the jurisdiction contemplated by La.R.S. 23:1310.8(A) and (B) as follows (emphasis in original omitted):

> [Louisiana Revised Statues 23:1310.8(B)] deals exclusively with changes in the amount of benefits. [Louisiana Revised Statutes 23:1310.8(B)] only authorizes the hearing officer in reviewing an award to "make an award ending, diminishing, or increasing the compensation awarded." On the other hand, . . . the continuing jurisdiction described in [La.R.S. 23:1310.8(A)(1)] refers to the power of the hearing officer to alter the nature of benefits awarded, e.g., changes from temporary total disability to supplemental earnings benefits.

While the *Brown* court indicated that jurisdiction pursuant to La.R.S 23:1310.8(A)(1) and (B) are somewhat different, the *Brown* court made clear that:

> Neither [La.R.S. 23:1310.8 A(1)] nor [La.R.S. 23:1310.8 B] is intended to allow the parties to relitigate what has already been litigated under the guise of continuing jurisdiction or the power of

4

modification. . . . **Claimant must either advance an issue in an open case that has not previously been litigated, or show a change in condition or a change of circumstances before [he] can even approach the threshold of continuing jurisdiction or the power of modification**.

*Brown,* 706 So.2d at 551 (emphasis added).

In her written reasons for ruling, the WCJ noted that La.R.S. 23:1310.8(A)(1) would apply for a reclassification of benefits and that La.R.S. 23:1310.8(B) would apply to a change in the amount of compensation or a request to end the payment of benefits, but that regardless of which provision applied, Numa Hero established its burden of proof. The WCJ concluded that Mr. Leleux's condition was no longer temporary as it had stabilized into a "chronic pain situation" and that Mr. Leleux was now capable of sedentary employment. Therefore, we disagree with Mr. Leleux's position that the WCJ did not require, or that it failed to find, a change in condition or circumstances.

In addition, Mr. Leleux suggests that Numa Hero was required to show a change in Mr. Leleux's *physical* condition from the time of the original consent judgment. We disagree. The requirement that a party seeking jurisdiction under La.R.S. 23:1310.8 must advance a new issue or show a change in condition or circumstances, "is broad and does not limit the requisite change in conditions to a physical change in the claimant's condition." *K-Mart Corp. v. Malbrough*, 04-2609, pp. 8-9 (La.App. 1 Cir. 12/22/05), 928 So.2d 133, 138.

While the parties in this matter focus on the burden of proof applicable to establish the WCJ's jurisdiction under La.R.S. 23:1310.8, we note that Numa Hero's burden to modify Mr. Leleux's benefits from TTD to SEB is actually two-fold: (1) It must prove by a preponderance of the evidence that there was a change in Mr. Leleux's condition or circumstances in order to establish the WCJ's

5

jurisdiction; and (2) It must also prove by a preponderance of the evidence that, because of Mr. Leleux's change in condition or circumstances, his entitlement to TTD under La.R.S. 23:1221(1)(d) has ceased. *See Lormand v. Rossclaire Constr.,* 01-1515 (La.App. 3 Cir. 12/12/01), 801 So.2d 675; *Alexander v. Roy O. Martin Lumber Co.,* 00-1344 (La.App. 3 Cir. 5/9/01), 784 So.2d 872, *writ denied,* 01-1684 (La. 9/21/01), 797 So.2d 676.

Even though Numa Hero sought to modify TTD benefits to SEB and did not seek to terminate benefits altogether, TTD benefits would nevertheless cease. Therefore, La.R.S. 23:1221(1)(d) is applicable to the analysis. At the time of Mr. Leleux's injury, La.R.S. 23:1221(1) provided:

> (d) An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required.

"In other words, when the claimant no longer requires treatment and his physical condition has stabilized, an award for TTD benefits is no longer appropriate and a determination regarding the extent of the Claimant's disability must be made." *Navarre v. K-Mart,* 01-753, p. 6 (La.App. 5 Cir. 11/27/01), 803 So.2d 206, 209.

Upon reaching maximum medical improvement, an injured worker who is able to return to work, even in pain, is no longer eligible for TTD benefits, but instead is relegated to SEB benefits if he is unable to earn 90% of his pre-accident wages. *Navarre,* 803 So.2d 206*; Foster v. Liberty Rice Mill,* 96-438 (La.App. 3 Cir. 12/11/96), 690 So.2d 792; *Battle v. Pilgrim's Pride Corp.,* 41,056 (La.App. 2 Cir. 6/28/06), 935 So.2d 336, *writ denied,* 06-1904 (La. 10/27/06), 939 So.2d 1288.

6

While the WCJ did not specifically mention La.R.S. 23:1221(1)(d) in her written reasons for ruling, she fully considered the facts necessary to terminate TTD under La.R.S. 23:1221(1)(d). Therefore, we will review the WCJ's ruling pursuant to a manifest error standard of review.

***Review of the WCJ's Factual Findings:***

Mr. Leleux's second and third assignments of error focus on the factual findings of the WCJ, so we will discuss them together.

In granting Numa Hero's motion, the WCJ found that "Mr. Leleux's condition is no longer 'temporary' but has plateaued into a chronic pain situation with some radiculopathy and numbness which is treated with regular 3 month visits to Dr. Hodges for examination and medication." The WCJ also gave significant weight to Dr. Belleau's opinion that Mr. Leleux had reached maximum medical improvement and was capable of sedentary employment. The WCJ further found that:

> The weight of the evidence establishes that Mr. Leleux continues to have pain and continues to receive maintenance visits and medication to alleviate his pain, but otherwise his condition has stabilized. His condition is no longer temporary. Both Dr. Belleau and Dr. Bernard, the Employer's choice of physician, believe that Mr. Leleux is capable of employment. Dr. Bernard is of the opinion that Mr. Leleux's MRI studies show degenerative disc disease but otherwise [he] would pass for unrestricted work activities if seen for a pre-employment physical. . . . On one point the court absolutely agrees with Dr. Bernard, that being that Mr. Leleux is a "very fit looking individual." The court would additionally describe his demeanor as almost peppy. While the court has no reason to disbelieve that Mr. Leleux experiences pain, his movements, appearance, and demeanor, at least on the day of the hearing, did not appear to be that of [a] person with totally disabling pain.

In addition, the WCJ found that Dr. Hodges's records did not fully support Mr. Leleux's testimony that his problems were worse or that his pain was more intense and frequent. Instead, the WCJ found that Dr. Hodges's reports showed

that Mr. Leleux's chronic pain complaints are fairly consistent, that Mr. Leleux has significantly progressed from a psychological standpoint, and that he is well adjusted emotionally and physically without clear signs of anxiety or depression.

On appeal, Mr. Leleux argues that the WCJ erred in finding that his condition had plateaued and stabilized to the point that a reasonable determination of the extent of his disability could be made. In support of his argument, Mr. Leleux points out that Dr. Belleau had recommended an FCE and that Dr. Hodges had referred Mr. Leleux back to Dr. Cobb to pursue a surgical option. Mr. Leleux then sets forth a list of his medications as of January 4, 2014. He also argues that his anxiety and depression have not improved, but that he is just coping with it better.

We fail to see how Mr. Leleux's continued pain management treatment with Dr. Hodges, his refusal to undergo surgery, his inability to undergo an FCE, his ability to cope with depression and anxiety, and the fact that he takes medication renders the WCJ's finding manifestly erroneous. The WCJ's finding is reasonably supported by the evidence, including Dr. Belleau's and Dr. Hodges's records.

Mr. Leleux also takes issue with the WCJ's observations that, on the day of the trial, Mr. Leleux appeared fit-looking, had a peppy demeanor, and did not appear to be in totally disabling pain. He suggests that these observations were inappropriate because they cannot be properly reviewed on appeal and that we should therefore disregard the WCJ's observations in our review. Mr. Leleux also submits that the WCJ's observations are inconsistent with Dr. Hodges's records and his own testimony that his pain was worse than it was at the time of the original judgment.

We first note that Mr. Leleux's argument that the WCJ's observations should be disregarded because they are not adequately reviewable is contrary to Louisiana law. In *Virgil v. American Guarantee & Liability Insurance Co.,* 507 So.2d 825, 826 (La.1987) (quoting *Canter v. Koehring Co.,* 283 So.2d 716, 724 (La.1973)), the Louisiana Supreme Court stated (emphasis added in bold):

> "When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. ***The reason for this well-settled principle of review is based*** **not only upon the trial court's better capacity to evaluate live witnesses** (as compared with the appellate court's access only to a cold record), but also *upon the proper allocation of trial and appellate functions between the respective courts.*"

Louisiana's three-tiered court system allocates the fact finding function to the trial courts. Because of that allocation of function (as **well as the trial court's normal procedure of evaluating live witnesses**), great deference is accorded to the trial court's factual findings, both express and implicit, and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appellate review of the trial court's judgment.

Similarly, in *Rosell v. ESCO,* 549 So.2d 840, 840 (La.1989), the Louisiana Supreme Court stated (emphasis added):

> When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; **for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said**.

Therefore, it was wholly appropriate for the WCJ, as the factfinder, to make observations of Mr. Leleux's appearance and demeanor during trial and consider those observations in weighing the evidence.

In the instant case, the material facts at issue are whether Mr. Leleux's condition or circumstances had changed, whether he had reached maximum medical improvement, and whether he was able to return to work regardless of pain. Mr. Leleux testified that his pain was more intense and more frequent than it was at the time of the original judgment. Dr. Hodges's reports reflect chronic pain as well as Mr. Leleux's subjective pain ratings. On the other hand, the WCJ observed that Mr. Leleux did not appear to be in totally disabling pain, despite his subjective complaints. Additionally, Dr. Belleau's report indicated Mr. Leleux had reached maximum medical improvement and was capable of sedentary work, and Dr. Bernard's report indicated that Mr. Leleux could have returned to unrestricted work.

We cannot say that the WCJ was manifestly erroneous in giving more weight to Dr. Belleau's opinion that Mr. Leleux had reached maximum medical improvement and was able to return to sedentary work, than to Mr. Leleux's testimony that he was experiencing more intense and more frequent pain, or to the subjective pain ratings he provided to Dr. Hodges.

An IME's medical conclusions are given significant weight because the IME is an objective party; however, the WCJ should evaluate all of the evidence presented in making a decision as to a claimant's medical condition. *Richardson v. Lil' River Harvesting,* 09-1090 (La.App. 3 Cir. 3/10/10), 33 So.3d 418. While the testimony of a treating physician should be accorded greater weight than that of a

10

physician who only saw a claimant once or twice, *Id.,* we conclude that Dr. Hodges's records are not inconsistent with Dr. Belleau's opinion.

Dr. Hodges's records show that Mr. Leleux sees him for pain management and medication every three months and that Mr. Leleux has continuously declined surgery. However, Dr. Hodges's records contain no opinion concerning whether or not Mr. Leleux has reached maximum medical improvement. In addition, as noted by the WCJ, while Dr. Hodges's record dated September 30, 2013, shows a "no work" status "pending diagnostic testing," "the court has no real further information about the testing referred to or the testing results." Therefore, the WCJ's factual findings were reasonable in light of the evidence presented, and we will not disturb them on appeal.

## CONCLUSION

For the foregoing reasons, we affirm the workers' compensation judge's ruling granting Numa Hero's motion and modifying the nature of Mr. Leleux's benefits from temporary total disability benefits to supplemental earnings benefits, based on a zero earnings calculation. Costs of this appeal are assessed to Appellant Ronald Leleux.

**AFFIRMED.**

11